IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

JERRY WAYNE SPENCER,               )
                                   )
            Plaintiff,             )
                                   )
     v.                            )          CV 324-046
                                   )
WHEELER CORRECTIONAL FACILITY      )
MEDICAL STAFF; HEAD DIRECTOR;      )
YVONNE NEAU, Medical Head Doctor;  )
HEATHER KERSEY, Warden-Care and    )
Treatment; AMY WILLIAMS, Medical Staff; )
SHAWN GILLIS, Warden Housing;      )
WHEELER CORRECTIONAL FACILITY;     )
and NURSING STAFF,                 )
                                   )
            Defendants.            )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, incarcerated at Augusta State Medical Prison in Grovetown, Georgia, is proceeding *pro se* in this case filed pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Wheeler Correctional Facility in Alamo, Georgia.

In exercise of its statutory power to screen *pro se* complaints, the Court **REPORTS** and **RECOMMENDS** Defendants Wheeler Correctional Facility, Wheeler Correctional Facility Medical Staff, Nursing Staff, and Head Director, and all claims against them, be **DISMISSED**.  See Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1277-78 (11th Cir. 2001) (*per curiam*); 28 U.S.C. § 1915A.  The Court also **REPORTS** and **RECOMMENDS** the motion to dismiss by Defendants Neau, Kersey, Williams, Gillis be **GRANTED**.  (Doc. no. 11.)

Lastly, the Court **REPORTS** and **RECOMMENDS** this civil action be **DISMISSED**, and an appropriate judgment of dismissal be **ENTERED**.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff names the following Defendants:  (1) Wheeler Correctional Facility ("WCF"); (2) WCF Medical Staff; (3) Nursing Staff; (4) Head Director; (5) Yvonne Neau, Medical Head Doctor; (6) Heather Kersey, Warden of Care and Treatment; (7) Amy Williams, Medical Staff; and (8) Shawn Gillis, Warden of Housing.  (Doc. no. 8, pp. 1-5.)  Taking all of Plaintiff's factual allegations as true, as the Court must at the pleadings stage, and drawing all reasonable inferences in Plaintiff's favor, the facts are as follows.

Plaintiff was incarcerated at WCF from August 2020 until May 2022.  (Id. at 4.)  As early as August 2020, Plaintiff began experiencing severe throat pain and coughing that caused him to vomit and pass out, experience difficulty swallowing and eating, and lose weight.  (Id. at 5, 8, 10.)  Plaintiff requested medical appointments but was only seen by medical personnel after significant delay.  (Id. at 4, 12-13.)  Each time medical staff saw Plaintiff, they gave him medication that did not alleviate his symptoms and failed to order proper diagnostic tests.  (Id. at 4, 7.)  Plaintiff's condition continued to deteriorate.  (Id.)  Eventually, Plaintiff requested bloodwork and the lab results detected cancer.  (Id. at 4.)  Further testing at Dublin Hospital over an eight-day stay confirmed the cancer diagnosis.  (Id. at 7.)  As a result of the delay in Plaintiff's diagnosis and treatment, Plaintiff's cancer is now stage four and uncurable.  (Id. at 5, 7.)  In May 2022, Plaintiff transferred to Augusta State Medical Prison ("ASMP").  (Id. at 4.)

Plaintiff does not provide any dates other than his arrival at WCF and onset of symptoms in August 2020 and his departure from WCF in May 2022. (See id.) Plaintiff is unsure whether each defendant worked at WCF during this time period and explains as follows: "some of these defendants may not have been at [WCF] during my condition and sickness but if they or whom was at the time should still be held accountable." (Id. at 4.)

### 1.    Plaintiff's Relevant Grievance History

In support of their motion to dismiss, Defendants Neau, Kersey, Williams, and Gillis produced the declaration of LaJuanna Johnson, Grievance Coordinator at WCF. (See doc. no. 11-2, pp. 1-6 ("Johnson Decl.").) As Grievance Coordinator, Ms. Johnson is familiar with the Georgia Department of Corrections ("GDC") grievance process, and her responsibilities include ensuring compliance with the applicable grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶¶ 4, 5, 9, 12.)

Ms. Johnson identified eight grievances Plaintiff filed while incarcerated at WCF and ASMP, dating back to 2018. (Id. ¶¶ 17-19.) Of those eight grievances, one relates to Plaintiff's symptoms and treatment of his cancer. In Grievance Number 340625, submitted at ASMP on July 5, 2022, Plaintiff claimed he had received no treatment for his cancer since his arrival at ASMP on May 24, 2022, despite repeated requests. (Id. ¶ 19(a); doc. no. 11-1, p. 4.) He also described his worsening symptoms, noted his grievance was "directed at staff in medical," and requested treatment and other relief to alleviate his symptoms. (Doc. no. 11-1, p. 4.) Grievance Number 340625 does not mention medical personnel, Plaintiff's treatment, or any topic concerning his experience at WCF. (Id.) The Warden partially granted that grievance, noting

Plaintiff had an upcoming appointment with oncology and Plaintiff needed to maintain his scheduled appointments. (Id.)

Two of Plaintiff's grievances, Grievance Numbers 267832 and 304718, were filed at WCF prior to August 2020, the alleged onset date of his cancer symptoms, and do not allege facts related to his own medical condition or treatment. (Johnson Decl., ¶ 18(a), (b); doc. no. 11-1, pp. 11-12.) Four of Plaintiff's grievances, Grievance Numbers 316053, 316963, 318760, and 320696, were filed at WCF between October 23, 2020, and February 17, 2021, and concerned scabies. (Johnson Decl., ¶¶ 18(c)-(f); doc. no. 11-1, pp. 5-10.) Plaintiff filed Grievance Number 357883 at ASMP concerning the loss of property during a shakedown. (Johnson Decl., ¶ 19(b); doc. no. 11-1, p. 3.)

### B.    Procedural History

Plaintiff filed his original complaint *pro se* in the Superior Court of Wheeler County. (Doc. no. 1-1.) On May 6, 2024, the Clerk of Superior Court issued summonses to Defendants as identified in the complaint, by title only. (Doc. nos. 1-4, 1-6, 1-8, 1-10, 1-12.) A deputy served process in May 2024 on Yvonne Neau, Heather Kersey, Amy Williams, and Shawn Gillis, individuals who held these titles at the time of service. (Doc. nos. 1-5, 1-7, 1-9, 1-11, 1-13; see also doc. no. 1, pp. 1-2 & n.1.) On June 17, 2024, Defendants Neau, Kersey, Williams, and Gillis removed the case to federal court by special appearance, contending they are not named as Defendants and were not properly served. (Doc. no. 1, p. 1 n.1.) Plaintiff timely filed the operative amended complaint in compliance with a court order identifying pleading deficiencies. (Doc. no. 8; see also doc. no. 18.) Defendants Neau, Kersey, Williams, and Gillis moved to dismiss and stay discovery. (Doc. nos. 11, 12.) The Court stayed discovery pending resolution of the motion to dismiss. (Doc. no. 17.)

## II.    SCREENING THE AMENDED COMPLAINT FOR DEFENDANTS NAMED BUT NOT YET SERVED

Notwithstanding any filing fee paid upon removal, Plaintiff's amended complaint must be screened to protect potential defendants.  28 U.S.C. § 1915A(b); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (per curiam).

### A.    Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

**B.    The Case Should Be Dismissed Because Plaintiff Failed to Truthfully Disclose His Prior Filing History**

Here, pursuant to Federal Rule of Civil Procedure 11, Plaintiff stated he does not recall having filed other lawsuits in state or federal court relating to the conditions of his imprisonment. (Doc. no. 8, pp. 14.) He further states he has never had a case dismissed under the "three strikes rule." (Id. at 11.) However, the Court is aware of at least six other cases Plaintiff has filed concerning his incarceration: Spencer v. Laughlin, No. 3:21-cv-002 (S.D. Ga. Mar. 1, 2021) (dismissed for failure to exhaust administrative remedies and for lying); Spencer v. Flourney, No. 1:20-cv-4468 (N.D. Ga. Dec. 4, 2020) (dismissed for failure to pay filing fee where Plaintiff had three strikes under 28 U.S.C. § 1915(g)); Spencer v. Williams, No. 5:17-CV-483 (M.D. Ga. Apr. 25, 2018) (dismissed for failure to state a claim); Spencer v. Treadaway, No. 5:17-CV-484 (M.D. Ga. Jan. 8, 2018) (dismissed as frivolous); Spencer v. Dozier, No. 1:17-CV-319 (N.D. Ga. May 24, 2017) (dismissed for failure to state a claim);

Spencer v. Cobb Cnty. Det. Ctr., No. 1:15-cv-1721 (N.D. Ga. June 9, 2017) (dismissed at summary judgment).  Plaintiff commenced each of these cases well before the instant case, meaning he had every chance to fully disclose his prior filing history.

The Eleventh Circuit has approved of dismissing a case based on dishonesty in a complaint.  In Rivera, the Court of Appeals reviewed a prisoner plaintiff's filing history for the purpose of determining whether prior cases counted as "strikes" under the PLRA and stated:

> The district court's dismissal without prejudice in Parker is equally, if not more, strike-worthy.  In that case, the court found that Rivera had lied under penalty of perjury about the existence of a prior lawsuit, Arocho.  As a sanction, the court dismissed the action without prejudice, finding that Rivera "abuse[d] the judicial process[.]"

Rivera, 144 F.3d at 731; see also Strickland v. United States, 739 F. App'x 587, 587-88 (11th Cir. 2018) (per curiam) (affirming dismissal of complaint based on failure to disclose eight habeas petitions filed in district court); Sears v. Haas, 509 F. App'x 935, 936 (11th Cir. 2013) (per curiam) (affirming dismissal of complaint where prisoner plaintiff failed to accurately disclose previous litigation); Redmon v. Lake Cnty. Sheriff's Off., 414 F. App'x 221, 223, 226 (11th Cir. 2011) (per curiam) (affirming dismissal, after directing service of process, of amended complaint raising claims that included denial of proper medical care and cruel and unusual punishment for placement in a "restraint chair" and thirty-seven days of solitary confinement upon discovering prisoner plaintiff failed to disclose one prior federal lawsuit); Young v. Sec'y Fla. for Dep't of Corr., 380 F. App'x 939, 940-41 (11th Cir. 2010) (per curiam) (affirming dismissal of third amended complaint based on a plaintiff's failure to disclose prior cases on the court's complaint form); Alexander v. Salvador, No. 5:12cv15, 2012 WL 1538368 (N.D. Fla. Mar. 21, 2012) (dismissing case alleging deliberate indifference to serious medical

needs where plaintiff failed to disclose new case commenced in interim between filing original complaint and second amended complaint), *adopted by* 2012 WL 1538336 (N.D. Fla. May 2, 2012).

Indeed, "pursuant to 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss an IFP action if the court determines that the action is 'frivolous or malicious.'" Burrell v. Warden I, 857 F. App'x 624, 625 (11th Cir. 2021) (*per curiam*) (citing 28 U.S.C. § 1915(e)(2)(B)(i)). "An action is malicious when a prisoner misrepresents his prior litigation history on a complaint form requiring disclosure of such history and signs the complaint under penalty of perjury, as such a complaint is an abuse of the judicial process." Id. The practice of dismissing a case as a sanction for providing false information about prior filing history is also well established in the Southern District of Georgia. See, e.g., Williamson v. Cnty. of Johnson, GA, CV 318-076, 2018 WL 6424776 (S.D. Ga. Nov. 5, 2018), *adopted by* 2018 WL 6413195 (S.D. Ga. Dec. 6, 2018); Brown v. Wright, CV 111-044 (S.D. Ga. June 17, 2011); Hood v. Tompkins, CV 605-094 (S.D. Ga. Oct. 31, 2005), *aff'd*, 197 F. App'x 818 (11th Cir. 2006) (*per curiam*). Plaintiff's failure to disclose his prior cases was a blatantly dishonest representation of his prior litigation history, and this case is subject to dismissal without prejudice as a sanction for abusing the judicial process.

### C.    Plaintiff Fails to State a Claim Against Wheeler Correctional Facility

WCF is not an entity capable of being sued. See Parks v. Georgia, No. CV 517-047, 2017 WL 2930832, at *3 (S.D. Ga. July 10, 2017) (explaining "penal institutions are entities which are not capable of being sued, as they are buildings"); see also Brannon v. Thomas Cnty. Jail, 280 F. App'x. 930, 934 n.1 (11th Cir. 2008) (*per curiam*) (noting "Thomas County Jail is not entity capable of being sued under Georgia law"); Clark v. Georgia, Civ. Act. No. 1:21-CV-3396, 2021

WL 8084671, at *3 (N.D. Ga. Nov. 8, 2021) (explaining state prison not an entity capable of being sued), *adopted by* 2022 WL 898362 (N.D. Ga. Mar. 28, 2022); Smith v. Chatham Cnty. Sheriff's Dep't, No. CV 412-224, 2012 WL 5463898, at *2 (S.D. Ga. Oct. 22, 2012) ("[T]he [county jail] is not a legal entity capable of being sued."), *adopted by* 2012 WL 5463762 (S.D. Ga. Nov. 8, 2012); Sebastian v. Maynard, No. 5:10-CV-221, 2010 WL 3395040, at *2 (M.D. Ga. July 12, 2010) ("The Lamar County Detention Center is not a legal entity that is subject to suit under 42 U.S.C. § 1983."), *adopted by* 2010 WL 3395154 (M.D. Ga. Aug. 21, 2010). Appropriate parties for suit under § 1983 include "persons" who participated in the alleged violation. See 42 U.S.C. § 1983; see also Ga. Insurers Insolvency Pool v. Elbert Cnty., 368 S.E.2d 500, 502 (Ga. 1988) (limiting § 1983 liability to "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue") (quotations omitted). Thus, all claims against WCF should be dismissed.

### D. Plaintiff Inadequately Identifies Defendants WCF Medical Staff and Nursing Staff

Plaintiff lists as defendants WCF Medical Staff and Nursing Staff, but does not specify any individual medical or nursing staff who are allegedly responsible for his injuries. (See doc. no. 8.) Generally, "fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted). An exception exists, "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). In Richardson, the Eleventh Circuit Court of Appeals found merely describing a John Doe defendant as a correctional officer "was insufficient to identify the defendant among the many guards employed [at the facility.]" Id. Likewise, Plaintiff provides no names for individual medical staff at WCF and merely describes

them as medical personnel working at WCF between 2020 and 2022.  (See generally doc. no. 8.)

Because this description is insufficient, dismissal of unknown Defendants WCF Medical Staff and

Nursing Staff is appropriate.

### 1.    Plaintiff Fails to State a Claim Against Defendant Head Director

The Eleventh Circuit has held that a district court properly dismisses a defendant where a

prisoner, other than naming the defendant in the caption of the complaint, fails to state any

allegations that associate the defendant with the purported constitutional violation.  Douglas v.

Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in

pleading, we must demand that the complaint state with some minimal particularity how overt acts

of the defendant caused a legal wrong.").  While Plaintiff names Defendant Head Director in the

caption of his amended complaint, Plaintiff does not mention this defendant anywhere in the

statement of his claim nor does he make any allegations associating this defendant with any

purported constitutional violations.  (See generally doc. no. 1-1.)  Dismissal of Defendant Head

Director is therefore appropriate.  See Douglas, 535 F.3d at 1321-22.

Moreover, to the extent Plaintiff impliedly alleges the "Head Director" is liable as a

supervisor, Plaintiff fails to state a claim against Defendant Head Director by virtue of his or her

supervisory position at WCF.  "Supervisory officials are not liable under § 1983 for the

unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious

liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and

citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per

curiam*).  Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of

*respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing

Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which

provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendant Head Director liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, as discussed above, Plaintiff makes no allegations this defendant participated in any violations, nor does he allege any causal connection between this defendant and the asserted constitutional violations in order to establish liability. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).

The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed

11

to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff's allegations do not provide the causal connection to hold Defendant Head Director liable. Plaintiff has not alleged (1) a history of widespread abuse regarding improper treatment of inmates at WCF, (2) an improper custom or policy put in place by Defendant Head Director regarding treatment of inmates, or (3) an inference Defendant Head Director directed prison employees to act, or knew they would act, unlawfully. Therefore, Plaintiff fails to state a claim upon which relief may be granted against Defendant Head Director.

### 2. Official Capacity Monetary Damages

Plaintiff is suing Defendants in their individual and official capacities. (Doc. no. 8, pp. 2-3.) However, the Eleventh Amendment bars official capacity claims against state officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law.

## III. MOTION TO DISMISS

Defendants Neau, Kersey, Williams, and Gillis (the "moving Defendants") contend Plaintiff's amended complaint fails to state a claim upon which relief may be granted against them, Plaintiff failed to exhaust administrative remedies, and they were not properly served pursuant to Rule 4 of the Federal Rules of Civil Procedure. Because Plaintiff fails to state a claim and failed to exhaust administrative remedies as to his claims against the moving Defendants, the Court need not address service of process.

### A. Legal Standard for Rule 12(b)(6) Motion

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the amended complaint, not whether the plaintiff will ultimately prevail on the merits. Adinolfe v. United Techs. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014). As noted

*supra*, the same standard that applies when the Court screens the complaint pursuant to 28 U.S.C. § 1915 applies when the Court assesses a motion to dismiss under Rule 12(b)(6). Wilkerson, 366 F. App'x at 51. The Court must accept as true all facts alleged in the amended complaint and draw all reasonable inferences in Plaintiff's favor. Erickson, 551 U.S. at 93-94; Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). As noted above, to avoid dismissal for failure to state a claim, the allegations in the amended complaint must "state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

As when screening a complaint, the Court must also consider Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (citation omitted). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, but this liberal construction does not mean that the Court has a duty to re-write the complaint. Erickson, 551 U.S. at 94; Snow, 450 F.3d at 1320 (11th Cir. 2006).

### B.    Plaintiff Fails to State a Claim Against Defendants Neau, Kersey, Williams, and Gillis

The moving Defendants argue "Plaintiff has failed to make allegations against [them] . . . that rise above general dissatisfaction with his medical treatment, the allegations do not specify how each individual violated his rights, and many of the allegations lie in vicarious or supervisory liability." (Doc. no. 11, p. 11.) They further argue the amended complaint reflects Plaintiff "essentially does not know whether the individuals he has named were actually at [WCF] during the period complained of or if they were involved in his treatment." (Id.)

Plaintiff reiterates his amended complaint allegations and argues, "whether he knows their names or not," WCF personnel are responsible for his injuries including continued progression of his cancer. (Doc. no. 15, p. 2.) Plaintiff acknowledges "some of the [WCF] medical staff may have changed since [May 24, ]2022, [and] the new staff members are not accountable[,] but any listed that were there from [February ]2020 – [May 24, ]2022[,] are and I want them to be held accountable." (Id. at 7.) Plaintiff fails to state a claim against each moving Defendant.

#### 1.    Defendant Neau

Plaintiff's allegations against Defendant Neau are as follows:

Medical Head Doctor (Yvonne Neau), who is in charge of all inmates[,] only personally took time to look at me only after numerous sick-calls were put in and I requested blood-work to be done in one of them[. T]hese delays did add to my condition and delay the diagnostic test that revealed cancer, whether Neau or not, it was delayed.

(Doc. no. 8, p. 4.) To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege: (1) he had a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) his injury was caused

by a defendant's wrongful conduct.  Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*).  To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence."  Melton, 841 F.3d at 1223.

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good."  Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris, 941 F.2d at 1505; see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).  Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Plaintiff ends his allegations regarding Yvonne Neau by stating that his treatment was delayed "whether Neau [was involved] or not," demonstrating Plaintiff does not know whether Defendant Neau was the lead physician, whether she had any responsibilities for his care during the unspecified time period when his condition worsened, and whether she provided any care to him. (Doc. no. 8, p. 4.) Even if one looks past these glaring omissions, Plaintiff still fails to state a claim. Plaintiff fails to allege Defendant Neau subjectively knew about his serious medical need before he requested bloodwork. In fact, the amended complaint makes clear Defendant Neau had no involvement in his care prior to the bloodwork request, and other medical personnel handled his care until she became involved. The amended complaint also makes clear that, when Defendant Neau became involved in his care, the medical unit granted his request for bloodwork and transported him to a hospital without delay upon receipt of the lab results indicating cancer. Plaintiff makes no allegation Defendant Neau acted inadequately or otherwise failed to render appropriate medical care to him. At most, he wishes Defendant Neau had become involved earlier.

Furthermore, while Plaintiff alleges his condition deteriorated over his nearly two years at WCF and the delay in treatment was lengthy, Plaintiff does not provide any dates or description of his condition at any point in time. Accordingly, there is no basis for determining when Plaintiff's condition became severe and at what point his need for medical care was obvious. Nor does he allege when Defendant Neau became aware of his condition, whether his condition at that time constituted a serious risk to his health, and whether from that point in time Defendant Neu delayed or denied providing medical care in a manner that is more than mere negligence.

Lastly, Plaintiff impliedly alleges Defendant Neau is liable for the actions of WCF medical personnel as a supervisor. As discussed *supra*, supervisory officials are not liable under § 1983 based on theories of *respondeat superior* or vicarious liability. Hartley, 193 F.3d at 1269; Rosa,

522 F. App'x at 714; Kruger, 164 F. Supp.2d at 1333-34.  Accordingly, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).   Therefore, to hold Defendant Neau liable, Plaintiff must demonstrate that she (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown, 906 F.2d at 671).

Here, as discussed above, Plaintiff makes no allegations Defendant Neau participated in any alleged violations, nor does he allege any causal connection between this defendant and the asserted constitutional violations in order to establish liability.   See Zatler, 802 F.2d at 401. Plaintiff has not alleged (1) a history of widespread abuse regarding improper treatment of inmates at WCF, (2) an improper custom or policy put in place by Defendant Neau regarding treatment of inmates, or (3) an inference Defendant Neau directed prison employees to act, or knew they would act, unlawfully.  See Brown, 906 F.2d at 671; Hartley, 193 F.3d at 1269; Cottone, 326 F.3d at 1360.

For these reasons, Plaintiff fails to state a claim against Defendant Neau, and she should be dismissed from this case.

### 2.    Defendant Kersey

Plaintiff's allegations against Defendant Kersey are as follows:

Warden Care, Treatment (Heather Kersey), who is to oversee the health, etc., of inmates, upon all the sick calls I wrote[,] never got involved or followed-up to get updates of a condition like mine, that multiple people saw in my health.  The Warden of Care and Treatment has a responsibility to oversee the Medical Director and Administrator of Health Service showed deliberate indifference in my case by failure of a correctional facility's medical staff to treat a serious medical condition, whether it[']s Kersey or not in charge.

(Doc. no. 8, p. 4.) Plaintiff admits he is uncertain whether Defendant Kersey was in the role of Warden, Care and Treatment, at the time of relevant events, which is fatal to his claims against her.

In addition, Plaintiff does not allege Defendant Kersey participated in any alleged violations, nor does he allege any causal connection between this defendant and the asserted constitutional violations.  See Zatler, 802 F.2d at 401.  Plaintiff has also not alleged (1) a history of widespread abuse regarding improper treatment of inmates at WCF, (2) an improper custom or policy put in place by Defendant Kersey regarding treatment of inmates, or (3) an inference Defendant Kersey directed prison employees to act, or knew they would act, unlawfully. Accordingly, Plaintiff fails to state a claim against Defendant Kersey.

### 3.    Defendant Gillis

Plaintiff's allegations against Defendant Gillis are as follows:

> Warden Housing (Shawn Gillis), as an inmate the government etc. put in place someone to house and oversee those who are incarcerated, deliberate indifference is shown by the Warden of Housing because I had to also rely on them to make sure my medical needs are met and they were not.

(Doc. no. 8, p. 5.) This claim fails for the same, fundamental reason that Plaintiff is unsure whether Defendant Gillis was serving as Warden of Housing during the relevant time period.  Furthermore, Plaintiff does not allege Defendant Gillis participated in any alleged violations, nor does he allege any causal connection between this defendant and the asserted constitutional violations in order to establish liability.  See Zatler, 802 F.2d at 401.

In fact, Plaintiff provides no facts to suggest that Defendant Gillis, as the supervisory official overseeing Housing, had any role to play in Plaintiff's medical care.  Plaintiff has also not alleged (1) a history of widespread abuse regarding improper treatment of inmates at WCF, (2) an

improper custom or policy put in place by Defendant Gillis regarding treatment of inmates, or (3) an inference Defendant Gillis directed prison employees to act, or knew they would act, unlawfully.

Accordingly, Plaintiff fails to state a claim against Defendant Gillis.

### 4. Defendant Williams

Plaintiff's allegations against Defendant Williams are as follows:

> Medical Staff (Amy Williams), each time I came to sick-call I was given different medications that did nothing for my condition and it was noticed each time I went to medical that I was getting worse and not able to swallow or eat, my weight lost, and outcry for help, pale skin and an uncontrollable cough that caused me to throw up were signs of something serious[. M]edical staff, whom ever it was[,] showed deliberate indifference.

(Doc. no. 8, pp. 4-5.)  Plaintiff admits he cannot recall whether Defendant Williams provided the care he claims was insufficient.  Furthermore, as with Defendant Neau, Plaintiff fails to provide a description of his condition during the time period Defendants Williams might have cared for him, and her subjective knowledge of a serious medical need.  Nor does he allege what care she provided and explain why it constitutes deliberate indifference.  For these reasons, Plaintiff fails to state a claim against Defendant Williams.

### C. Plaintiff Failed to Exhaust as to His Claims Against Defendants Neau, Kersey, Williams, and Gillis

### 1. Legal Framework Concerning Exhaustion

Where, as here, a defendant files a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play":  (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation."  Ross v. Blake, 578 U.S. 632, 643-44 (2016).  Here, Plaintiff makes no allegation or arguments under the first or second situations.  To the extent Plaintiff argues prison officials did not make grievance procedures available to inmates while housed in the medical unit at WCF, the Court makes factual findings with respect to that allegation infra § III(C)(3).

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotations omitted).  If a prisoner fails to

complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### 2.    The Administrative Grievance Procedure

The applicable administrative grievance procedure is GDC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019. (Johnson Decl. ¶ 6; doc. no. 11-2, pp. 7-25.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C); (Johnson Decl. ¶ 7.) The administrative remedies procedure commences with filing the original grievance with a counselor or through a kiosk or tablet. PN 227.02 § IV(C)(1)(c-d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the

grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § IV(C)(2)(e).  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § IV(C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

### 3.    Plaintiff's Failure to Exhaust

In his amended complaint signed on June 26, 2024, Plaintiff acknowledges there is a grievance procedure at WCF and states he filed a grievance concerning the events in the instant suit while he was incarcerated there.  (Doc. no. 8, pp. 9-10.)  When asked "[w]hat steps, if any, did [Plaintiff] take to appeal" the result of that grievance, Plaintiff wrote, "[c]annot recall, been a while."   (Id. at 10.)   Plaintiff also notes, however, that he "continued [exhausting administrative remedies] until [he] was seen by a doctor" and cites and attaches two Health Services Request Forms as evidence of his attempts to exhaust.  (Id. at 11-13.)

Plaintiff's grievance history demonstrates he filed one grievance related to his cancer symptoms or treatment, Grievance Number 340625, submitted at ASMP on July 5, 2022. (Johnson Decl. ¶ 19(a); doc. no. 11-1, p. 4.)  Grievance Number 340625 does not mention Defendants Neau, Kersey, Williams, or Gillis, nor does it mention anything about his experience at WCF.  (See id.)  In fact, Plaintiff concedes in his response to the motion to dismiss that "none of the grievances [submitted at WCF] are about cancer," but also reports he "grievanced and put in sick-calls" concerning the symptoms he experienced at WCF.  (Doc. no. 15, pp. 3, 5.)

Plaintiff further argues the numerous sick call requests he submitted prior to his cancer diagnosis concerning the symptoms he was experiencing satisfy the exhaustion requirement because he couldn't file grievances concerning his cancer when he had not yet been diagnosed. (See doc. no. 15; see also doc. no. 8, pp. 12-13; doc. no. 11-2, pp. 26-29.)  Plaintiff also alleges, after being diagnosed with cancer at Dublin Hospital, he was housed in a medical unit at WCF for approximately two weeks pending his transfer to ASMP, and the grievance process was unavailable to him while he was housed in that unit.  (Id. at 5-6.)  Plaintiff further alleges, once he was transferred to ASMP, he was barred from filing a grievance concerning his experience at WCF because more than ten days had elapsed since his cancer diagnosis.  (Id. at 6); see also PN 227.02 § IV(C)(1)(b).  Because the factual allegations in the amended complaint, the motion to dismiss, and Plaintiff's response are inconsistent as to whether Plaintiff exhausted administrative remedies, the Court concludes dismissal is not appropriate at step one and moves to step two.  See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendant has the burden to prove Plaintiff did not exhaust administrative remedies.  See Maldonado v. Baker Cnty. Sheriff's Off., 23 F.4th 1299, 1307-08 (11th Cir. 2022).  As explained in detail below, the Court concludes the moving Defendants have carried their burden to show Plaintiff did not exhaust his administrative remedies as to his claims against them.

The moving Defendants have shown through the Johnson Declaration that Plaintiff filed only one grievance related to his cancer symptoms or treatment.  (Johnson Decl. ¶¶ 19(a).) He filed this grievance while incarcerated at ASMP, after his transfer from WCF, and this grievance complains only of events occurring at ASMP and does not mention WCF personnel.

(Johnson Decl. ¶¶ 19(a), 20; doc. no. 11-1, p. 4.)  Despite Plaintiff's unsworn assertion he filed a grievance concerning the events forming the basis of his complaint, he provides no factual detail to support this claim and his arguments in his response to the motion to dismiss suggest he filed only sick-call requests, not proper grievances.  (See doc. no. 8, pp. 9-10; doc. no. 15.)  Accordingly, the Court finds Plaintiff filed no grievance related to the claims asserted against the moving Defendants.  See Turner, 541 F.3d at 1082.

Plaintiff explains he did not file a grievance because he had not yet been diagnosed with cancer and instead filed sick call requests to seek medical care for his underlying symptoms while at WCF.  (Doc. no. 15.)  But sick call requests do not constitute administrative grievances and cannot substitute for a properly filed grievance.  (See Johnson Decl. ¶ 22(b)); see also PN 227.02 § IV(A)(5).  Moreover, Plaintiff demonstrated he was aware he could grieve medical concerns and was not limited to sick call requests, as evidenced by the several grievances he filed requesting additional and timely medical attention concerning a scabies rash during the same period he alleges he suffered from his cancer symptoms.  (See Johnson Decl., ¶¶ 18(c)-(f); doc. no. 11-1, pp. 5-10.)

The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules.  Johnson, 418 F.3d at 1159.  The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could

> simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds.  We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter  . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").

Plaintiff argues his failure to file a grievance concerning his claims against the moving Defendants should be excused because (1) the grievance process was unavailable to him after his cancer diagnosis, while housed in a medical unit at WCF; and (2) when he was transferred to ASMP and regained access to the grievance process, more than ten days elapsed following any grievable events at WCF.  The argument misses the mark because Plaintiff must have known of the delays and insufficiencies in his medical care long before the cancer diagnosis, as he makes clear in the amended complaint allegations.  He opted instead to complain by submitting only sick call requests, which does not satisfy the exhaustion requirement.  Furthermore, the ten-day time limit for filing a grievance may be waived for good cause, such as an assertion the grievance process was unavailable to inmates housed in a medical unit at WCF, but Plaintiff never bothered to seek such an exception.  See PN 227.02 §§ III(H) & IV(C)(1)(e)(ii)(2).

The transfer to ASMP is no excuse either.  As explained above, the Statewide Grievance Procedure is available to all offenders in the DOC, and if a grievance is filed in reference to a different facility than that of the offender's current place of incarceration, the grievance coordinators at the current and originating facilities work in concert to ensure screening and processing occurs.  See id. §§ I and IV(E)(5).  Moreover, even if Plaintiff had filed a grievance at WCF, upon transferring to a different DOC facility, the Statewide Grievance Procedure provides that facilities shall continue to screen and process grievances filed prior to transfer.  See id. § IV(E)(8).  Accordingly, the Court finds the grievance process was available to Plaintiff and, therefore, he was required to properly exhaust administrative remedies prior to filing suit and failed to do so.

Because he fails to state a claim and failed to exhaust his administrative remedies, the motion to dismiss should be granted as to all claims against the moving Defendants.  Leal, 254 F.3d at 1279 ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

## IV.   ANY POTENTIAL STATE LAW CLAIMS SHOULD BE DISMISSED WITHOUT PREJUDICE

To the extent Plaintiff may have any viable state law claims regarding the events alleged in his amended complaint regarding his cancer diagnosis and treatment, those should be dismissed without prejudice so that Plaintiff may pursue them, if he so chooses, in state court. Federal district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which

"form part of the same case or controversy under Article III of the United States Constitution."

Id. § 1367(a).  However, § 1367(c)(3) states that "[t]he district courts may decline to exercise

supplemental jurisdiction over a claim under subsection (a) if . . . the district court has

dismissed all claims over which it has original jurisdiction. . . ."  Id. § 1367(c)(3) (emphasis

added).

The Eleventh Circuit has explicitly advised that a district court is well within its

discretion to dismiss state law claims once the basis for original federal court jurisdiction no

longer exists:

> At this time, the case retains no independent basis for federal jurisdiction. . . .
> A proper resolution of the two state law causes of action will require a careful
> analysis of Alabama law--something the courts of Alabama are in the best
> position to undertake and, for reasons of federalism, should undertake. . . .  We
> conclude that the district court should dismiss the state law claims so that
> Appellee may pursue them in state court.

Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Republic of Panama v. BCCI

Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing

Panama's federal claims against the . . . defendants, the district court correctly dismissed its

remaining state law claims against these defendants."); Rice v. Branigar Org., Inc., 922 F.2d

788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant

jurisdiction over state law claims is discretionary).

Here, the Court has determined that the amended complaint fails to state a claim that

could serve as the basis for original federal court jurisdiction.  Thus, without the federal claim,

the Court concludes any potential state law claims should be dismissed without prejudice.

Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims

are dismissed before trial, a district court should typically dismiss the pendant state claims as

well. . . .  [I]t usually should do so without prejudice as to refiling in state court.").

## V.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants Wheeler Correctional Facility, Wheeler Correctional Facility Medical Staff, Nursing Staff, and Head Director, and all claims against them, be **DISMISSED**.  See Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1277-78 (11th Cir. 2001) (*per curiam*); 28 U.S.C. § 1915A. The Court also **REPORTS** and **RECOMMENDS** the motion to dismiss by Defendants Neau, Kersey, Williams, Gillis be **GRANTED** as to the moving Defendants and any claims against them.  (Doc. no. 11.)  The Court further **REPORTS** and **RECOMMENDS** any potential state law claims be dismissed without prejudice.  Should the presiding District Judge adopt this recommendation, the Court also **REPORTS** and **RECOMMENDS** this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 10th day of January, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA